**SEVENTH DAY ADVENTIST CHURCH OF AMERICAN SAMOA and HTC TUATO'O TAUTALATASI, Plaintiffs**

v.

**GATAI MANEAFAIGA and SINAALEVAIFOA FANENE, Defendants**

High Court of American Samoa
Land and Titles Division

LT No. 5-92

March 12, 1993

Before KRUSE, Chief Justice, LOGOAI, Associate Judge.

Counsel: For Plaintiffs, Afoa Moega Lutu
 For Defendants, Charles V. Ala'ilima

Plaintiff Tuato'o Tautalatasi is the sa'o (senior matai) of the Tuato'o family of Alofau, American Samoa. He seeks eviction of the defendant Gatai Maneafaiga, also known by his title "Moemalemalo" (hereinafter "Moemalemalo"), a lesser matai of the Tuato'o family, from a particular structure which is claimed by both Moemalemalo and the Seventh Day Adventist Church (hereinafter the "church"). The structure was recently built by the church as a residence for its pastor; in fact, Moemalemalo had arranged the building permit on behalf of the church. Moemalemalo, however, claims this as a replacement for his original dwelling, which the church was using prior to its destruction by a recent hurricane.

No one disputes that the structure lies within the Tuato'o communal land known as "Salamau"; indeed, Moemalemalo claims entitlement to Salamau as a member of the Tuato'o family. Rather, the dispute concerns pule, a matter which, according to settled law and custom, is clearly the exclusive prerogative of the sa'o. Notwithstanding, Moemalemalo and certain of his siblings appear to have other ideas about pule. This lawsuit followed; besides the differences on pule, Tuato'o further seeks eviction because Moemalemalo does not render tautua (traditional service).

## FACTS

A number of years ago, Moemalemalo, on his own initiative, brought the church onto the site after inviting a pastor and a small number of fellow adherents to utilize his home for worship. This

dwelling was described as a semi-European structure--essentially an open Samoan fale with a corrugated iron roof--to which the church later added improvements. According to Tuato'o, this all happened while he was off-island, but after his return, he confronted Moemalemalo with the church's unauthorized use of family land.

The matter eventually escalated into a lawsuit, with Tuato'o seeking an injunction to enjoin Moemalemalo from building on Salamau without first obtaining his permission as the family's sa'o. *See Tuato'o v. Moemalemalo*, LT No. 1214-71 (1971). Tuato'o testified that he filed this suit after Moemalemalo and his sisters openly challenged his pule; however, he subsequently relented to church use of the site after Moemalemalo apologized, and peace was again restored to the family.

In 1974, Moemalemalo and his immediate family moved to the mainland, where they reside to the present day. At least since leaving the territory, Moemalemalo has not rendered tautua. Until quite recently, however, Moemalemalo continued to remain the go-between the church and the sa'o. When the former needed the matai's permission, Moemalemalo attended to securing that permission. In time, the church added other structures on Salamau.

In 1981, Tuato'o decided that the church's use of Salamau should be documented, and he accordingly advised the church that he desired to formalize any further use of his family's land by way of lease. Word subsequently got to Moemalemalo, still on the mainland, who then traveled to Samoa to work things out with the sa'o on the church's behalf. His efforts culminated in a document, styled "Assignment of Land for Church Purposes," which he presented to Tuato'o for execution and which the latter signed. The document talks about the assignment of an ill-defined area of Salamau for a period of ten years at a nominal annual rent. It also talks of Moemalemalo as an "assignor" with provision made to include him as an additional signatory on behalf of the Tuato'o family. The document thus conveys the unmistakable impression that Moemalemalo also has something to do with pule.[1]

---

[1] A similar effect appears to have been likewise attempted in the government application form for a land-use and building permit for the structure now in dispute. Moemalemalo filled out the form by holding himself out as the *landowner*, although the document was apparently signed by the sa'o.

The defense theory here presented in explanation is that the land encompassing the site was the subject of an outright assignment by the present Tuato'o's father, and his predecessor-in-title, to Moemalemalo's side of the family. The alleged assignee was said to be Moemalemalo's maternal grandmother, who was also the assigning matai's sister; hence, this supposedly explained the manner of the document's wording and its inclusion of Moemalemalo as a signatory. Thus, Moemalemalo in his testimony referred to a shared pule with the sa'o to this area of Salamau. Furthermore, one of his sisters, who also resides on the mainland, took the stand and asserted somewhat defiantly that she too had pule over the site. As may be gathered, the claimed out-and-out assignment is flatly denied by the sa'o.

The dispute arose following a 1992 split among the membership of the church in American Samoa. In the aftermath, Moemalemalo opted to go with the breakaway sect. He now wants the church's access to Salamau to cease; however, in trying to accomplish this, he has again alienated the sa'o because of his manipulative efforts. As noted, the assignment document with the church provided for a ten-year term, which would end in 1991. The document also contained a provision which referred to a renewal option to be exercised upon the giving of notice to "both assignors." Shortly after the split, however, Moemalemalo approached the sa'o and told him that the church was not seeking to renew the assignment since it was planning to move to either Tula or Masefau. The sa'o thereupon instructed Moemalemalo to prepare some sort of writing to accordingly advise the church that there would not be a renewal of assignment. Tuato'o was thereafter surprised to receive a delegation of church officials who visited him at home beseeching a renewal of the assignment. Tuato'o then learned for the first time that Moemalemalo had in fact left the church and that the church's relocation plans, as related by Moemalemalo, were nothing more than misrepresentation.

After dwelling on the matter, Tuato'o subsequently signed a ten-year lease with the church. Moemalemalo, on the other hand, was not to be rebuffed. After his further attempts to dissuade the sa'o proved unsuccessful, he took it upon himself to physically oust the church by moving into the structure at issue and then setting up the co-defendant, Sinaalevaifoa Fanene, as its occupant.

153

## DISCUSSION

Under Samoan custom, the sa'o has pule, or the authority to make decisions about family lands. *See Gi v. Leia*, 11 A.S.R.2d 137 (1989); *Coffin v. Mageo*, 4 A.S.R. 14 (1970); *Malaga v. Alaga*, 4 A.S.R. 735 (1966); *Lutu v. Fuimaono*, 4 A.S.R. 450 (1964); *Lolo v. Heirs of Sekio*, 4 A.S.R. 477 (1964); *Tiumalu v. Scanlan*, 4 A.S.R. 194 (1961). By virtue of that pule, the sa'o parcels out and assigns family land for the use of individual family members. *See Malaga v. Alaga, supra*; *Leapaga v. Masalosalo*, 4 A.S.R. 868 (1962); *Tiumalu v. Scanlan, supra*. The authorities thus clearly recognize that the pule to Tuato'o family property, Salamau, lies with the Tuato'o, the sa'o of the Tuato'o family. The claim, therefore, to some sort of shared pule with respect to Salamau is without any basis whatsoever.

At the same time, the authorities are also clear that while the matai may assign and parcel out family land, his pule over such assigned property is not thereby terminated. *Pisa v. Solaita*, 1 A.S.R. 520 (1935); *Mailo v. Fuamaila* 1 A.S.R. 449 (1931); *Levu v. Maluia*, 1 A.S.R. 197 (1909); *Toleafoa v. Tiapula*, 7 A.S.R.2d 117 (1988), *aff'd* 12 A.S.R.2d 56 (1989). Thus, no ground exists for the contention that an "exclusive" assignment of Salamau to the Moemalemalo side of the family thereby deprived the sa'o of his pule or somehow restricted it. What seems to be canvassed here again is a theory of outright assignment of communal land--a theory which this court has previously rejected as being contrary to law (against the alienation of communal land) as well as custom. *See Gi v. Leia, supra; Sivia v. Porter*, 13 A.S.R.2d 95 (1989).[2]

On the other hand, Moemalemalo has certain rights to Salamau as a member of the Tuato'o family.

---

[2] Counsel also submitted that the church-assignment document was evidence of a shared pule, and he referred our attention to *Satele v. Seumalo*, 6 A.S.R.2d 103 (1987), for the proposition that certain assignments of communal land could be outright. We reject the submission; the cited case does not stand for this proposition, and the evidentiary value of the document is naught since the document itself rests on the invalid premise that pule is shared with a lesser matai. *Cf. Mailo v. Fuamaila*, 1 A.S.R. 449 (1931) (senior matai retains pule to lands assigned to a lesser matai).

[U]nder Samoan customs (fa'a Samoa) . . . communal family land is owned by the Samoan family as such and each member of the family has a right to the use of a portion of the family land." This right to use family land has also been held to be a proprietary right within the due process clause.

*Lutu v. Taesaliali'i*, 11 A.S.R.2d 80, 87 (1989) (quoting *Tuana'itau v. Pagofie*, 4 A.S.R. 375, 381 (1963)). These property rights, however, are "conditional" to the extent that they attract reciprocal obligations towards the sa'o and family. *Fairholt v. Aulava*, 1 A.S.R.2d 73 (1983). Significant among these is the obligation to tautua. *Toleafoa v. Tiapula*, *supra*. Indeed, failure to tautua is grounds for eviction from family land. *Leapaga v. Masalosalo*, *supra*; *Vaotuua Family v. Puletele*, 3 A.S.R. 145 (1955).

## CONCLUSIONS OF LAW

We conclude on the foregoing that the Tuato'o, as the sa'o or senior matai of the Tuato'o family, has the singular pule with respect to Tuato'o family land Salamau; that in exercise of that pule, the sa'o may evict from family lands a family member who fails to render tautua in accordance with Samoan custom; and that since Moemalemalo has failed to serve the sa'o in accordance with custom, he is not entitled to Tuato'o family property and may be evicted by the sa'o. The petition for eviction is therefore granted, and judgment will enter accordingly.

It is so ordered.